UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MARY PENA o/b/o E.I.P., | |
| Plaintiff, | |
| v. | CAUSE NO. 1:20-CV-335 DRL-SLC |
| KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

OPINION & ORDER

Ezekiel Pena, an adolescent at the time of his application and still so, appeals the Social Security Commissioner's final judgment denying disability insurance benefits.[1] Mr. Pena requests remand of his claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court denies Mr. Pena's request and affirms the administrative decision.

BACKGROUND

Mr. Pena is a teenager who has allergies, asthma, and attention deficit hyperactive disorder (ADHD) [R. 22, 280]. Mr. Pena has a ninth-grade education and no relevant past work [ECF 16 at 4]. His mother has been told that he will not be able to get a high school diploma, but he will receive a certificate of completion [R. 51].

In an October 2016 Individualized Education Program Report (IEP), the evaluator described Mr. Pena as "not demonstrat[ing] adequate academic progress," and that he had "difficulties in sustaining attention and distractibility" [R. 352]. Specific academic concerns included reading, reading comprehension, and written expression [R. 352]. As part of a Psychoeducational Evaluation Report

---

[1] Mr. Pena's mother filed on his behalf, but the court will refer to Mr. Pena as the claimant for the sake of consistency.

completed in December 2016, Mr. Pena's mother reported that Mr. Pena had "difficulty starting and finishing tasks, is easily distracted, fidgets and squirms, is easily frustrated, and has a short attention span and poor concentration" [R. 355]. The report concluded Mr. Pena "require[d] a great deal of supervision, redirection, and help from parents and school staff," and "[h]is low adaptive skills are significantly interfering with him being independent in the school and home settings" [R. 364].

In October 2017, a case conference committee report revealed Mr. Pena turned in roughly 50 percent of his assignments, but he maintained good relationships with teachers and peers [R. 379]. His teachers commented that he had difficulty with multi-step instructions and resorted to using his phone, even when prohibited in class [R. 380]. Notably, his language arts teacher commented that he responded well to reminders, maintained a positive attitude, and engaged in conversations about class content [*id.*]. His grades at this time included one A, one B, two Cs, and two Fs [*id.*].

In April 2018, an updated educational report described Mr. Pena as "respectful to all of his peers and teachers" [R. 395]. His strengths included "asking questions about his reading material" [*id.*]. He communicated plans for after high school, including living with his mother and attending culinary school, with the goal of eventually becoming a chef at an Italian restaurant [R. 396-97]. Additionally, Mr. Pena saw doctors in May 2018 and August 2018, and he reported no behavioral problems, grade problems, or other current concerns [R. 290, 348]. Finally, in August 2018, one of Mr. Pena's teachers reported he could understand written and oral directions, though the teacher acknowledged Mr. Pena had only been in her class for six days [R. 216].

In March 2019, an updated educational report noted Mr. Pena was not completing all assignments, but he participated by adding insightful comments to class discussions [R. 409-10]. His resource teacher reported Mr. Pena was easily distracted by others and would rather play games than do the assigned work [R. 410]. Notably, his math teacher said he should have the highest score in the class, as he has the highest ability but the lowest performance [*id.*].

In December 2019, in the hearing held before an Administrative Law Judge (ALJ), both Mr. Pena and his mother provided testimony regarding Mr. Pena's impairments and overall lifestyle. Mr. Pena testified that he did not understand the topics in history class and got distracted in weightlifting class [R. 37]. Additionally, he reported that his medication for ADHD "helps [him] a lot," though it starts to wear off by the end of the school day [R. 38]. Mr. Pena takes two medicines for ADHD – his mother reminds him to take one in the morning before school, and Mr. Pena goes to the school nurse, either before or after lunch, to take the second medication [R. 44]. He has responsibilities at home, such as cleaning his room, though he often must be reminded [R. 49]. Mr. Pena acknowledged he has some friends [R. 39, 42], and his mother reported he has two friends who are girls [R. 50]. He is involved with an e-sports gaming program after school and plays golf [R. 41-42].

The ALJ found Mr. Pena had severe impairments, asthma and ADHD, as defined in 20 C.F.R. § 416.924(c), but that he didn't have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1, nor had an impairment or combination of impairments that functionally equaled the severity of the listings. Ultimately, the ALJ decided Mr. Pena hasn't been disabled, as defined by the Social Security Act, since May 21, 2018 [ECF 14]. He appealed.

STANDARD

The court has authority to review the Appeal Council's decision under 42 U.S.C. § 405(g). Because the Appeal Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is that evidence which "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing

*Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and [the] conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

On May 21, 2018, an application for supplemental security income was filed. Mr. Pena was under 18 years old. Today he is 17 years old. When considering a child claimant's eligibility for disability benefits, the ALJ must apply the following three-step evaluation process: (1) if the child is engaged in substantial gainful activity, he is not disabled regardless of the medical findings; (2) if a child's impairments are not severe (by not significantly limiting his ability to perform basic work activities), he is not disabled; and (3) if the child's impairments meet, medically equal, or functionally equal an impairment described in the children's listings, he is disabled. *See* 20 C.F.R. §§ 416.924(b)-(d).

To assess a child's functional equivalency, the ALJ must consider the claimant's impairments in the following six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for himself; and (6) health and physical well-being. *See* 20 C.F.R. § 416.926a(b). An impairment will be functionally equal to a listing if a child has a "marked" limitation in two of these domains or an "extreme" limitation in one domain. *See* 20 C.F.R. § 416.926a(d). If functional equivalency is found, the ALJ must consider all medically determinable impairments, and their interactive and cumulative effects regardless of severity, on any effected domain. *See* 20 C.F.R. §§ 416.926a(a), (c).

The ALJ concluded Mr. Pena was not disabled despite having two impairments: asthma and ADHD [R. 18-19]. Mr. Pena challenges this conclusion with two arguments: (1) the ALJ erred in her consideration of the evidence under Listing 112.11 by referring to insignificant evidence from a

4

primary care doctor and a teacher who had only known Mr. Pena for six days at the time of the report, and (2) the ALJ erred by discrediting Mr. Pena's statements when considering subjective symptoms in violation of SSR 16-3p.

      A.    *The ALJ Didn't Err in Assessing the Evidence under Listing 112.11.*

Mr. Pena asserts that the ALJ didn't properly analyze or assign weight to certain evidence relevant to listing 112.11. He says the ALJ erred in relying on two reports—one from a nurse practitioner that described Mr. Pena as "doing better" and another from a teacher who had only been teaching him for six days at the time she completed the report [R. 299]. The government responds by arguing the ALJ acknowledged the evidence of prior behavioral issues but that assertions of ongoing issues were inconsistent with subsequent evidence. Additionally, the government argues the ALJ acknowledged the brevity of the relationship with the teacher and broadly considered Mr. Pena's academic records.

The ALJ considered a variety of records: education records from 2016, 2017, 2018, and 2019; reports by Mr. Pena's parents; and medical records. In the 2016 academic report, Mr. Pena was reported to be on task 43 percent of the time [R. 281]. In the 2017 academic report, he was reported to struggle with multi-step directions, but he maintained relationships with peers [R. 380]. Additionally, Mr. Pena attended doctor's appointments in May 2018 and August 2018, at which he reported no behavior problems, grade problems, or other current concerns [R. 290, 348]. In 2018, one of Mr. Pena's teachers reported he could understand written and oral directions; however, the teacher acknowledged Mr. Pena had only been in her class for six days [R. 216]. In one of the academic reports from 2019, a teacher noted Mr. Pena was not completing all assignments, but he participated by adding insightful comments to class discussions [R. 409-10]. In conjunction with these various reports, the ALJ explained that no medical source has indicated any of Mr. Pena's conditions, either alone or combined, equated to a medical listing [R.19].

An ALJ must "minimally articulate [her] reasons for crediting or rejecting evidence of disability." *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). These reasons must be supported by substantial evidence in the record, *Beardsley v. Colvin*, 758 F.3d 834, 839 (7th Cir. 2014), a record the ALJ must develop fully and fairly, *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991). The ALJ recognized the 2016 academic report that says Mr. Pena was on track in class for only 43 percent of the time, but concluded that other, subsequent records contradicted this level of distractedness [R. 19]. The ALJ pointed to specific reports in the record, including reports from Mr. Pena's parents in 2017 that described his grades as improving [R. 290], and the 2018 teacher report that described no more than a slight problem in completing tasks [R. 217].

It is not the court's role to reevaluate the evidence, but merely to determine whether the ALJ developed the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004) ("Although the ALJ need not discuss every piece of evidence in the record, [she] must confront the evidence that does not support [her] conclusion and explain why it was rejected."). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and [the] conclusion," the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

The ALJ built a logical bridge between the evidence and her conclusion, while also acknowledging the evidence that does not support her conclusion. The ALJ recognized the dated 2016 academic report and Mr. Pena's level of distractedness or inattention at that time. The ALJ afforded greater weight to more recent evidence, including 2017 parental notes saying Mr. Pena focused better, had no behavioral problems, had good grades, and had no current school problems [R. 19]. The ALJ also explained the 2018 teacher report noted no more than a slight problem in completing tasks, and

6

that this subsequent evidence was inconsistent with a marked limitation [*id.*] The ALJ noted the older educational evaluation but found the more recent reports more compelling, particularly when balanced with the medical records and testimony [*id.*; *see also* R. 19-28]. The newer March 2019 evaluation provided a mix of information, noting his trouble focusing, while real, often was occasioned by computer games and his phone [R. 410]. He had the "highest ability" in math but the "lowest performance" [*id.*] The ALJ gave a nod to his distraction with his phone and the mother's belief that it should be locked away during the school day [R. 21]. The ALJ marshaled evidence concerning his performance, his grades, his interactions with educators, and a host of other details that demonstrates that she considered, as she said, all relevant evidence. Though the decision could be more explicit, it establishes a logical bridge based on substantial evidence. It isn't the court's role to reweigh the evidence, so the court must affirm.

      B.     *The ALJ Didn't Err in Applying SSR 16-3p.*

Mr. Pena asserts that the ALJ did not properly consider his subjective symptoms. The regulations describe a two-step process for evaluating an individual's symptoms. First, the ALJ considers "whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 SSR LEXIS 4, 3 (Mar. 16, 2016); *see also* 20 C.F.R. § 416.929. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability . . . to function independently, appropriately, and effectively in an age-appropriate manner for a child with a title XVI disability claim." SSR 16-3p, 2016 SSR LEXIS 4 at 4.

Notably, an ALJ's evaluation of subjective symptoms will be upheld unless it is patently wrong. *Shideler v. Astrue*, 688 F.3d 306, 310-311 (7th Cir. 2012). Here, Mr. Pena bears the burden of

7

demonstrating that the ALJ's subjective symptom evaluation was patently wrong. *See Horr v. Berryhill*, 743 F. Appx. 16, 20 (7th Cir. 2018). When an ALJ makes a finding in a childhood functional equivalence domain, the ALJ looks to how "appropriately, effectively, and independently [the child] perform[s] [his or her] activities compared to the performance of other children." 20 C.F.R. § 416.926a(b). Activities includes everything a child does at home, school, and in his or her community. *Id.* This finding is based on opinions from medical sources, parents, teachers, or others who see the child functioning in the community. 20 C.F.R. § 416.926a(b)(3). An ALJ does not have to evaluate every item of evidence on the record, but "the ALJ may not analyze only the evidence supporting her ultimate conclusion while ignoring the evidence that undermines it." *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014).

When a child with a Title XVI disability claim has an impairment that fails to meet the severity of a listing, the ALJ considers whether his impairment functionally equals that of the listings. SSR 16-3p, 2016 SSR LEXIS 4 at 11. To functionally equal the listings, the impairment must either result in "marked" limitations in two out of six domains of functioning or an "extreme" limitation in one of the six domains. *Id.* The ALJ evaluates whether the impairment(s) meet this threshold in light of the six domains of functioning: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi).

The ALJ began with the "acquiring and using information" domain, and she determined Mr. Pena had a less than marked limitation [R. 22]. The ALJ relied on medical determinations of Mr. Pena's ADHD and a report from a teacher claiming no limitation in age-appropriate functioning, albeit a brief relationship with Mr. Pena [*id.*] Further, the ALJ acknowledged evidence that leans contrary to her conclusion, including the 2016 academic report, which noted Mr. Pena received assistance with tests, had a below average IQ, and had demonstrated difficulties in achievement and adaptive skills

8

[*id*.] The ALJ ultimately analyzed these previous records, along with the updated records of improvement, and determined a less than marked limitation within the acquiring and using information domain.

Next, the ALJ considered the "attending and completing tasks" domain, and she determined Mr. Pena had a less than marked limitation [R. 23]. In her analysis, she noted Mr. Pena's reported problem areas, including how he is easily distracted and requires supervision for household chores [*id*.] The ALJ also explained the updated medical records that indicated no worsening limitation in age-appropriate functioning and considered Mr. Pena's testimony regarding the effectiveness of his ADHD medication [*id*.] Thus, the ALJ weighed the evidence on either side of the issue, and she decided the recent medical records and Mr. Pena's own testimony about his medication indicated a less than marked limitation.

The third domain—interacting and relating with others—resulted in no marked limitation [R. 24]. The ALJ noted that medical reports indicated Mr. Pena was respectful to adults [*id*.] Similarly, the teacher reports indicated no behavior problems in school and affirmed that Mr. Pena was respectful to peers and adults [R. 24-25]. Further, the ALJ considered Mr. Pena's and his mother's testimony that he was involved with friends and family [R. 25]. Though the ALJ did not address every piece of evidence here, including Mr. Pena's mother's assertion that he does not do anything on the weekends, all that is required of the ALJ is to rely on reasonable evidence and not ignore contrary lines of evidence; even if "reasonable minds could differ," the court must affirm if the decision has adequate support. *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009). The ALJ relied on reasonable evidence here, as she awarded great weight to the more recent evidence: 2018 physician and psychologist notes, recent behavioral reports from teachers, and Mr. Pena's testimony.

The ALJ next considered the fourth domain, moving about and manipulating objects [R. 25]. The ALJ found that Mr. Pena had a less than marked limitation in this domain, relying heavily on a

9

2018 physician note, which included report of lower back pain, but everything else was normal [*id.*] Notably, the ALJ considered Mr. Pena's testimony, including some limitation in physical activity due to his asthma, but not enough to keep him from "golfing a lot" [*id.*] Thus, the ALJ analyzed the medical expertise, Mr. Pena's reported physical activities, and Mr. Pena's subjective report of symptoms when determining a less than marked limitation in moving about and manipulating objects.

The ALJ next considered the "caring for yourself" domain, finding Mr. Pena had no limitation [R. 26]. Like the third domain, the ALJ noted the lack of behavioral issues in the testimony and teacher reports [*id.*] The ALJ analyzed Mr. Pena's mother's testimony regarding how it was difficult to get Mr. Pena up in the morning, to get him to take his medication, and to get him to clean his room; however, the ALJ concluded this didn't seem to be outside age-appropriate functioning for a 13 to 15 year old [*id.*]—a not unreasonable conclusion. Ultimately, the ALJ weighed the evidence and determined Mr. Pena had no limitation in the ability to care for himself. Even if "reasonable minds could differ," there is substantial evidence to support this conclusion.

Finally, the ALJ considered the sixth domain—health and physical well-being [R. 27]. The ALJ concluded that Mr. Pena had a less than marked limitation in this domain, analyzing medical records and noting the lack of need for emergency room visits or hospitalizations for asthma [*id.*] The ALJ still considered Mr. Pena's asthma condition, but she concluded that in the absence of more remarkable notes from physicians or psychologists, Mr. Pena's health struggles didn't reach the "marked" threshold.

On the whole, the ALJ considered a variety of evidence, and not only acknowledged but assessed why evidence contrary to her conclusions would be superseded by more recent or more persuasive reports or testimony. She analyzed each of the functional domains in light of evidence from medical records, teacher reports, and testimony from Mr. Pena and his mother. The ALJ provided more than a "mere[] . . . recitation of information contained in [Mr. Pena's] medical records." *Cf. Craft*

10

*v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008); *see also Giboyeaux v. Saul*, 2020 U.S. Dist. LEXIS 14868, 26 (N.D. Ind. Jan. 9, 2020). "Although the ALJ need not discuss every piece of evidence in the record, [she] must confront the evidence that does not support [her] conclusion and explain why it is rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). In this case, the ALJ assessed relevant evidence and explained her analysis in relation to that evidence. The ALJ relied on reasonable evidence and built an "accurate and logical bridge between the evidence and [the] conclusion," so the decision must stand. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014).

## CONCLUSION

Accordingly, the court DENIES Mr. Pena's request for remand (ECF 16) and AFFIRMS the administrative decision.

SO ORDERED.

October 6, 2021         *s/ Damon R. Leichty*
                        Judge, United States District Court